IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION

| | |
|---|---|
| American Petroleum Institute<br><br>Plaintiff,<br><br>v.<br><br>PEMCO Equipment Company and<br>James L. Breaux<br><br>Defendants. | Civil Action No. _____<br><br>MO-07-CV 031 |

FILED APR 20 2007
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY CLERK

## COMPLAINT

As its Complaint in this action, Plaintiff American Petroleum Institute ("API"), by its undersigned attorneys, alleges as follows, upon actual knowledge with respect to itself and its own acts, and upon information and belief as to all other matters:

### NATURE OF THE CASE

1.      This is an action for trademark infringement, counterfeiting, trademark dilution, and unfair competition, under federal, state, and/or common law. API brings this action because Defendants, individually and in association with each other and/or third parties, have without authorization manufactured, distributed, and/or sold oil drilling and oil well equipment bearing copies or imitations of API's certification marks and/or trademarks.

2.      No legitimate reason exists for Defendants' unauthorized use of API's certification marks and/or trademarks. Defendants are not currently licensed by API to use its certification marks. Despite the absence of a license, Defendants have offered, sold, and distributed oil drilling and oil well equipment bearing copies or imitations of

Complaint
Page 1

API's certification marks and trademarks with full knowledge of and reckless disregard for API's rights and with the intention of deceiving the public; and unfairly trading on the goodwill of API and its marks.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. §§ 1114, 1116, 1121, and 1125(a) and 28 U.S.C. §§ 1331, 1332, 1338(a), 1338(b) and 1367. This matter in controversy exceeds the sum or value of $75,000, exclusive of attorneys fees and costs.

4. API's claims arise in part in this District as well as in various other states and areas where Defendants have offered, sold, and/or distributed products bearing marks, names, and license numbers that violate API's rights. Upon information and belief, Defendants have a place of business and/or reside, and/or transact business in this District. Venue is accordingly proper pursuant to 28 U.S.C. § 1391(b).

## THE PARTIES

5. Plaintiff API is a District of Columbia corporation, with a business address at 1220 L Street, N.W., Washington, D.C. 20005. API is the nation's leading trade association for the petroleum and natural gas industry.

6. Defendant PEMCO Equipment Company ("PEMCO") is a Texas corporation, incorporated in March 2006, with a place of business at 2238 Steven Road, Odessa, Texas 79760-0472. PEMCO is in the business of manufacturing oil drilling and oil well equipment.

7. Defendant James L. Breaux ("Breaux") is an individual with a place of business at 2238 Steven Road Odessa Texas 79760-0472. Breaux is the owner of and registered agent for Defendant PEMCO. Prior to March 2006, Breaux operated PEMCO as an unincorporated business.

## HISTORY OF THE MARK API

8. For more than eighty years, API has used the trademarks and trade names AMERICAN PETROLEUM INSTITUTE and API for a wide variety of products, services, and programs aimed at the promotion, development, and improvement of the petroleum and natural gas industry. The marks and names AMERICAN PETROLEUM INSTITUTE and API have been synonymous for decades. The services and programs offered by API include: (a) association services to promote the petroleum and natural gas industry, (b) certification programs for various products, management systems, and personnel in the petroleum and natural gas industry, and (c) the development and publication of standards, specifications, and recommended practices for the petroleum and natural gas industry.

I. **API's Association Services**

9. Starting in 1924 and continuing to the present, API has used the trademark API for its association services. These services include dissemination of information regarding legislation for the petroleum and natural gas industry, as well as information about or of interest to the petroleum and natural gas industry; appearances before private and governmental bodies; and encouraging foreign and interstate trade in petroleum and natural gas products.

II. **API's Development and Publication of Standards, Specifications, and Recommended Practices.**

10. API has provided valuable advice and information for businesses in the petroleum and natural gas industry since 1924. For example, API's Standards Program has developed and implemented standards, specifications, and recommended practices to assist businesses in the use of safe, interchangeable parts, the production of quality products, and the adoption of safe-operations practices in the petroleum and natural

gas industry. Each API standard, specification, and recommended practice is published in a booklet that prominently bears the API mark. Currently, API has published more than 500 different standards, specifications, and recommended practices, relating to all facets of the petroleum and natural gas industry, including (a) upstream industries (petroleum exploration and production); (b) downstream industries (petroleum refining and processing); (c) petroleum pipelines; (d) marine transportation; and (d) natural gas operations.

11. API operates a web site located at "www.api.org," which provides information about its publications as well as its various standards, specifications, and recommended practices. API has operated the www.api.org website since early 1995.

II. **API's Certification Programs**

   A. **Oil and Gas Exploration and Production Products**

12. In the 1920's, API developed the API "Monogram" certification program as a means to facilitate the broad availability of safe, interchangeable products in the petroleum industry. The API Monogram program is a certification that products, management systems, and equipment used in the exploration and production of petroleum and natural gas meet certain API standards, specifications, and recommended practices. These products include oil drilling and oil well equipment. Products and equipment certified under the API Monogram program are entitled to bear the API Monogram certification mark discussed below.

13. API has continuously operated its API Monogram certification program from the 1920's to the present. During that time, API's Monogram certification has appeared on countless products manufactured and sold by numerous companies. Currently, API's Monogram mark is licensed for use on seventy (70) different types of

products, management systems and equipment for the oil and gas industry, and API has thousands of licensees that apply the API Monogram certification mark to their products.

14. The original API Monogram certification mark that appeared on products certified by API from the 1920's until the early 1980s is shown below:



15. In the early 1980s, the API Monogram certification mark was slightly revised to the form set forth below:



16. In 1997, the API Monogram certification mark was again slightly revised, this time to the form shown below (referred to hereinafter as the "API Monogram"):



17. API's Monogram certification program is of vital importance to the petroleum industry. A product bearing the API Monogram certification mark informs purchasers that the equipment (a) is interchangeable or compatible with other standard parts and equipment used in the industry, (b) has been built pursuant to recognized quality management systems that are designed to ensure equipment reliability, and (c) meets industry standards that are designed to ensure that the equipment performs in a safe manner and thereby reduce the potential for accidents or fires. In short, end users

rely on API's Monogram certification mark to be certain that the equipment and products it purchases will perform as intended in accordance with industry standards.

## FEDERAL REGISTRATION AND FAME OF THE API MARKS

18. API is the owner of the following federal trademark registrations for the mark API and API-formative marks in the petroleum and natural gas industry:

| Mark | Reg. No. | Goods /Services |
|---|---|---|
| (API Monogram Q diamond logo) | 2,353,970 | Products, materials, equipment for oil and gas exploration, drilling, production, transportation, refining, and marketing (Certification Mark) |
| API | 840,642 | Association services |
| API | 679,642 | Publications relating to testing methods, specifications and standards in the petroleum industry and in the field of supply for the petroleum industry. |
| (AP monogram) | 677,359 | Technical publications |
| (AP monogram) | 1,264,555 | Association services |

Complaint
Page 6



| | |
|---|---|
| 2,272,718 | Quality assurance services design, development, production, installation, and serving of products for use in oil and gas exploration, drilling, production, transportation, refining, and marketing |

19.     Pursuant to 15 U.S.C. §1115(a), API's federal registrations listed above constitute prima facie evidence of API's exclusive nationwide ownership of those registered marks. Moreover, Registration Nos. 677,359; 679,642; 840,642; 1,264,555; 1,868,779; and 1,872,999 have become incontestable and thus constitute conclusive evidence of API's exclusive right to those registered marks.

20.     API has extensively advertised its API marks and services and products offered under those marks over the years in periodicals, on the Internet, and at conferences and other events. By virtue of these activities, the API marks identifying its services and products have long been famous in the petroleum and natural gas industry.

## API'S CERTIFICATION OF OIL DRILLING AND OIL WELL EQUIPMENT

21.     As noted above, among the products certified by API are oil drilling and oil well equipment. In 1970, API created quality standard API Spec 4E for drilling and well servicing structures, specifically covering the design, manufacture and guying of such structures. From the 1970's until 1992, API certified manufacturers of oil drilling and oil well equipment under Spec 4E. Manufacturers of oil drilling and oil well equipment that

met API's product Spec 4E standard were permitted to place the API Monogram on their oil drilling and oil well equipment if they became licensed by API.

22. In 1985, API created quality standard API Spec 4F, also for drilling and well servicing structures. Spec 4F supersedes Spec 4E and is intended to meet the new requirements of present and future operating conditions, such as deeper drilling, offshore drilling from floating devices, and the effect of earthquakes, storms, and other adverse operating conditions. The new standard covers the design, manufacture, and use of steel derricks, portable masts, crown block assemblies, and substructures suitable for drilling and servicing of wells. It includes stipulations for marking, inspection, standard ratings, design loading, and design specification. Products manufactured under Spec 4E may not necessarily comply with all the requirements of Spec 4F.

23. API currently certifies manufacturers of oil drilling and oil well equipment under Spec 4F. Manufacturers of oil drilling and oil well equipment that meet API's product Spec 4F standard are currently permitted to place the API Monogram on their oil drilling and oil well equipment if they become licensed by API.

24. In 1992, API withdrew Spec 4E and ceased licensing the API Monogram to manufacturers meeting this standard. The Spec 4E licensees were given the opportunity to become certified under Spec 4F. Products only meeting the Spec 4E standard (which is obsolete) do not meet the Spec 4F standard are not permitted to bear the API Monogram.

25. Oil drilling and oil well equipment that do not meet API's product requirements and that are not built under API's approved/certified quality management

systems may not be as reliable or safe as oil drilling and oil well equipment meeting API's performance and quality standards. The use of the API Monogram on oil drilling and oil well equipment that is not built to API's performance and quality requirements could mislead end users as to the quality and performance of the oil drilling and oil well equipment. The use of such uncertified oil drilling and oil well equipment by unsuspecting end users could result in injury or death to workers and loss of property.

26. To obtain a license from API to use the API Monogram, a manufacturer must submit to API its "quality manual" outlining the organization's quality management system that the manufacturer has established to make certain that each of the products it produces meet API's quality and product specifications. If API is satisfied with the manual, it will then arrange for an on-site audit of the manufacturer's facilities. The audit involves an auditor evaluating the facility and the products made there to determine whether the manufacturer is following its quality management system and whether the manufacturer has the appropriate capabilities to manufacture the particular products for which it is being licensed. If and when the on-site audit has been successfully completed, API issues a license for that particular manufacturer.

### WRONGFUL ACTS OF DEFENDANTS PEMCO AND BREAUX

27. On information and belief, PEMCO and Breaux have falsely stated or advertised that PEMCO oil drilling and oil well equipment are or were certified under Spec 4E.

28. API has reviewed its records and neither PEMCO nor Breaux appear to have been certified or licensed to bear the API Monogram under Spec 4E or any other API standard.

29. In the Spring of 2005, API learned through one of its independent auditors that PEMCO and/or Breaux were selling equipment bearing the following spurious mark (the "Counterfeit Mark") on its metal nameplates:



30. On May 9, 2005, API sent a letter to PEMCO demanding that it cease use of the Counterfeit Mark and any other copy or variation of the API Monogram and/or API trademark. The letter also invited PEMCO to apply to be licensed under its certification program.

31. PEMCO failed to respond to API's May 9, 2005 letter. On November 21, 2005, API's outside counsel wrote to PEMCO again demanding that PEMCO cease use of the Counterfeit Mark and any other copy or variation of the API Monogram and/or API trademark.

32. On December 9, 2005, Breaux, as owner of PEMCO, replied to API's November 21, 2005 letter agreeing to discontinue use of any and all use of API's marks and agreeing to remove the Counterfeit Mark from its equipment.

33. Over the past year, Defendant PEMCO has unsuccessfully sought to have the oil drilling and oil well equipment it manufactures certified under the API Monogram. In May 2006, PEMCO filed an application seeking a license to use the API Monogram under Spec 4F. That application is still pending. API, through independent contractors, audited PEMCO's facility the week of August 28, 2006. PEMCO failed the audit and, to date, has not responded to the issues raised in the audit. At this time, PEMCO is not licensed to use the API Monogram certification mark on any products.

34. Despite not having a license to use the API Monogram certification mark, and having promised to cease use of the Counterfeit Mark, PEMCO continues to use the Counterfeit Mark, as well as the API mark, on its equipment.

35. In December 2006, an employee of an API licensee, Crown Energy of Odessa, Texas, discovered oil drilling and oil well equipment bearing the Counterfeit Mark, the API mark, and the PEMCO name in a rig yard across the highway from Crown Energy's place of business. On information and belief, Defendants manufactured this equipment and operate this rig yard.

36. On January 4, 2007, an employee of Crown Energy again visited the rig yard near Crown Energy and took a photograph of the rig bearing the Counterfeit Mark, the API mark, and the PEMCO mark. The metal name plate on the oil drilling equipment bears a date of December 2, 2006, Model No. 36-180-0, and Serial No. 1513. The name plate also bears the Counterfeit Mark and the legend "API std 4F, SECOND EDITION."

37. Taken as a whole, Defendant's use of API's marks on this name plate falsely suggests that API has certified, approved, and/or endorsed Defendants' oil drilling and oil well equipment under Spec 4F.

## INJURY TO API

38. Defendants' use of the Counterfeit Mark, and the API mark, along with its false suggestion that its products are API certified, have irreparably injured and, if permitted to continue, will further irreparably injure API, its marks, the goodwill associated with its marks, and its reputation as the certifier of high-quality standards.

39. Defendants' actions described above are likely to cause confusion, mistake, or deception as to the source or origin of Defendants' goods; are likely to falsely suggest a certification, connection, sponsorship, license, approval, and/or association of Defendant and Defendants' goods with API.

40. API has no adequate remedy at law.

## FIRST CLAIM FOR RELIEF
## TRADEMARK COUNTERFEITING UNDER
## SECTIONS 32(a) AND 34(d) OF THE LANHAM ACT
## 15 U.S.C. §§ 1114(a) AND 1116 (d)

41. API repeats and realleges the allegations set forth in paragraphs 1 through 40 hereof.

42. In their use of the Counterfeit Mark, Defendants, individually and collectively, have copied API's federally registered API Monogram certification mark, listed in Paragraph 18 above.

43. The Counterfeit Mark is substantially indistinguishable from the registered API Monogram.

44. Defendants' willful and deliberate actions constitute counterfeiting of API's federally registered mark, in violation of Sections 32(a), and 34(d) of the Lanham Act, 15 U.S.C. §§ 1114(a), 1116(d), and 1127, and cause damage to API.

## SECOND CLAIM FOR RELIEF
## TRADEMARK INFRINGEMENT UNDER
## SECTION 32(1) OF THE LANHAM ACT
## 15 U.S.C. § 1114 (1)

45. API repeats and realleges the allegations set forth in paragraphs 1 through 45 hereof.

46. Defendants' actions described above have caused, and are likely to cause, confusion, mistake, or deception of the public as to the source, certification, sponsorship, and/or approval of Defendants' goods.

47. Defendants' willful and deliberate actions constitute willful infringement of each of API's federally registered marks listed in Paragraph 18 of this Complaint, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

### THIRD CLAIM FOR RELIEF
### FALSE ADVERTISING AND UNFAIR COMPETITION UNDER
### SECTION 43(A)(1)(A) OF THE LANHAM ACT
### 15 U.S.C. § 1125 (a)(1)(A)

48. API repeats and realleges the allegations set forth in paragraphs 1 through 48 hereof.

49. The aforesaid willful and deliberate acts of Defendants are likely to cause confusion, mistake, or deception as to the certification, origin, sponsorship, and/or approval of Defendants' goods with API, and thus constitute false advertising and false designations of origin in violation of Section 43(a)(1)(A) of the Trademark Act of 1946, as amended, 15 U.S.C. § 1125(a)(1)(A).

### FOURTH CLAIM FOR RELIEF
### FALSE ADVERTISING AND UNFAIR COMPETITION UNDER
### SECTION 43(A)(1)(B) OF THE LANHAM ACT
### 15 U.S.C. § 1125 (a)(1)(B)

50. API repeats and realleges the allegations set forth in paragraphs 1 through 50 hereof.

51. The aforesaid willful and deliberate acts of Defendants misrepresent the nature, characteristics, or qualities of his goods and commercial activities, and thus constitute false advertising and false designations of origin in violation of Section 43(a)(1)(B) of the Trademark Act of 1946, as amended, 15 U.S.C. § 1125(a)(1)(B).

## FIFTH CLAIM FOR RELIEF
## TRADEMARK DILUTION
## UNDER SECTION 43(C) OF THE LANHAM ACT
## 15 U.S.C. § 1125 (c)

52. API repeats and realleges the allegations set forth in paragraphs 1 through 52 hereof.

53. Based on the inherent distinctiveness of the API marks; API's duration and extent of use of the marks; its duration and extent of advertising featuring the marks; the geographic areas in which it has sold, rendered, advertised, and/or certified goods and services featuring the marks; the amount and volume of sales under the marks; the degree of public recognition of the API marks; and the federal registration of the API trademarks, API's marks have become famous, as that term is used in Section 43(c) of the Lanham Act.

54. The aforesaid willful and deliberate acts of Defendants, all occurring after the API marks became famous, are likely to dilute API's famous mark by creating an association between API and Defendants or Defendant's products that would impair the distinctiveness of API's marks in violation of Section 43(c) of the Trademark Act of 1946, as amended, 15 U.S.C. § 1125(c).

55. The aforesaid willful and deliberate acts of Defendants, all occurring after the API marks became famous, are likely to dilute API's famous mark by creating an association between API and Defendants and Defendants' products that is likely to harm API's reputation in violation of Section 43(c) of the Trademark Act of 1946, as amended, 15 U.S.C. § 1125(c).

## SIXTH CLAIM FOR RELIEF
## TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION
## UNDER COMMON LAW

56. API repeats and realleges the allegations set forth in paragraphs 1 through 56 above.

57. Defendant is explicitly and implicitly passing off its products as being certified by API and made by authorized API licensees, thus causing injury to API's business and reputation.

58. The aforesaid acts of Defendant constitute common law trademark infringement, passing-off, misappropriation of API's goodwill, and unfair competition in Texas and other states where Defendants' offer, sell, distribute, and/or advertise their goods, including this District, thereby causing a likelihood of confusion in violation of the common law of Texas, and laws of other states, by reason of which API has suffered, and will continue to suffer, irreparable and pecuniary injury.

## PRAYER FOR RELIEF

WHEREFORE, API prays that this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief including, but not limited to, the following:

A. A preliminary and permanent injunction enjoining Defendants, their officers, directors, employees, agents, subsidiaries, related companies, representatives, distributors, dealers, and all persons in active concert or participation with any of them from using in any form or manner the Counterfeit Mark, and any of API's marks, including but not limited to those listed in paragraph 18, and any confusingly similar or dilutive marks or names.

B. A preliminary and permanent injunction enjoining Defendants, their officers, directors, employees, agents, subsidiaries, representatives, distributors, dealers, and all persons in active concert or participation with any of them, from taking any actions that falsely suggest that Defendants and/or Defendants' products are certified, licensed, or approved by API or otherwise meet any of API's standards or specifications, including but not limited to API spec 4F.

C. Awarding API monetary relief including damages sustained by API in an amount not yet determined but believed to be well in excess of Seventy-Five Thousand Dollars, , pursuant to 17 U.S.C. § 1117(a)-(b).

D. Awarding Defendants' profits pursuant to 17 U.S.C. § 1117(a)-(b).

E. Awarding API statutory damages of $1,000,000 per counterfeit mark per type of goods sold pursuant to 15 U.S.C.§ 1117(c)(2).

F. Ordering the seizure of Defendants' counterfeit goods, counterfeit packaging, the means of making the counterfeit goods and marks, and records documenting the manufacture, sale, or receipt of things involved in such violation, all pursuant to 15 U.S.C. § 1116(d).

G. Ordering the destruction of Defendants' name plates and/or goods bearing the Counterfeit Mark, the API Monogram, and any other indicia of API, and the means of making the counterfeit goods, pursuant to 15 U.S.C. § 1118.

H. Ordering Defendants to immediately issue corrective advertising and immediately notify in writing each purchaser of counterfeit and/or infringing goods, advising them that Defendants' counterfeit and infringing products were not certified or

licensed by API, and that Defendants used the API Monogram mark without the authorization or knowledge of API.

    I.    Awarding API treble damages pursuant to 15 U.S.C. § 1117.

    J.    Awarding API its attorneys' fees in this action pursuant to 15 U.S.C. § 1117 and other applicable laws.

    K.    Awarding such other relief as this Court may deem appropriate.

Respectfully submitted,

**LYNCH, CHAPPELL & ALSUP**
A Professional Corporation
300 North Marienfeld, Suite 700
Midland, Texas 79701
(432) 683-3351
(432) 683-2587 FAX

By: _____
Harper Estes
State Bar No.: 06675400